FOR THE UNITED STATES DISTRICT COURT
IN THE DISTRICT OF NEW MEXICO

THOMAS MAY,

      Plaintiff,

v.                                        CIV. No. 13-1021  GBW/KK

MATTHEW COCKMAN, *et al.*,

      Defendants.

## ORDER GRANTING SUMMARY JUDGMENT

This matter is before the Court on Defendants' first and second Motions for Summary Judgment and supporting Memorandum Briefs.  *Docs. 52, 69*.  Having reviewed the parties' briefing (*docs. 53, 54, 80, 82*) and the relevant law, I will GRANT the Motions.

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff brought this action in New Mexico's Eleventh Judicial District, contending that his dismissal involved violations of state and federal law including defamation, retaliation, racial discrimination, and conspiracy.  *See doc. 3-1, Ex. A*. Defendants removed the case to this Court.  *See doc. 3*.  On October 29, 2013, Defendants moved for dismissal of Counts I, V, VII, XIV, and XV of Plaintiff's Complaint.  *Doc. 7*. The Court granted dismissal for each of these counts, with the exception of Count I.

*Doc. 68*.  On May 26, 2015, Defendants moved for summary judgment as to Counts II, III, IV, VI, VIII, IX, X, XI, XII, XIII, XVI, and XVII.  *Doc.* 52.  Following this Court's ruling on their motion to dismiss, Defendants also moved for summary judgment as to Count I.  *Doc. 69*.

### B.    Undisputed Facts

1.  Plaintiff Thomas May is a former public defender with the Aztec office of the New Mexico Public Defenders Department (hereinafter "NMPDD") who was hired on October 15, 2012, and dismissed from employment on August 20, 2013.  *Doc. 3-2*, Ex. H.[1]

2.  Plaintiff's entire tenure at NMPDD fell within the one-year probationary period for public defender employees set forth by New Mexico regulation. N.M. Admin. Code 10.12.2.8 (A) (7/1/2015) (stating that "[a] probationary period of one year is required of all employees unless otherwise provided for by these rules").

3.  Plaintiff cites two protected activities which occurred while he was employed at the NMPDD that allegedly led to adverse action against him.  First, Plaintiff began to complain about illegal activities in the workplace as well as the high turnover of female and racial minority employees.  *Doc. 3-1*, Ex. A at

---

[1] While a party cannot cite to their own pleadings for contested facts (*see infra* at 20, n.4), all parties have agreed to the authenticity of the evaluation, rebuttal and dismissal letter attached to Plaintiff's Complaint by relying on them in their summary judgment briefing.

9.  Second, Plaintiff provided advice and assistance to three other employees, Jeanie Hatch, Kindahl Roe, and Celesty Tsosie, in pursuing grievances against their employer relating to racial and gender discrimination.  *Doc. 3-1*, Ex. A at 8-12; *see also doc. 53-1* at 13.  This assistance included aiding these co-workers in obtaining union representation, filing various intra-departmental grievances and EEOC complaints, and sending rebuttal letters contesting "fabricated statements" in the content of poor performance evaluations.  *Doc. 3-1*, Ex. A at 8-12*; see also doc. 3-2*, Ex. A-B; Ex. E; Ex. G; Ex. J-K.

4.  On July 12, 2013, Plaintiff received a New Mexico State Personnel Board Employee Evaluation performed by his supervisors. This evaluation provided feedback regarding multiple alleged deficiencies with Plaintiff's job performance. *Doc. 3-2*, Ex. D.

5.  On July 12, 2013, Plaintiff met with his supervisor, Managing Attorney Stephen Taylor, regarding Plaintiff's written employee evaluation.  *Doc. 3-1*, Ex. A at 10; *See also doc. 53-1* at 6.  At this meeting, Plaintiff "declined to discuss the untruths" upon which the evaluation was based.  *Doc. 3-1*, Ex. A at 10; *doc. 53-1* at 6.

6.   Instead, Plaintiff opted to write a rebuttal letter contesting some, but not all of the allegations levied against him, which he delivered to both Taylor and

District Defender Matthew Cockman on August 1, 2013.  *Doc. 3-1*, Ex. A at 10;

*See doc. 53* at 14-20.

7.  On August 20, 2013, Taylor and Cockman gave Plaintiff a letter of dismissal.

*Doc. 3-2*, Ex. H.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the moving party demonstrates that

"there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden

of "show[ing] that there is an absence of evidence to support the nonmoving party's

case."  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation marks omitted)).

Once the movant meets this burden, the non-moving party is required to designate

specific facts showing that "there are . . . genuine factual issues that properly can be

resolved only by a finder of fact because they may reasonably be resolved in favor of

either party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at

324.

The Court's role is not to weigh the evidence or determine credibility, but rather

merely to assess the threshold issue of whether a genuine issue exists as to material

facts.  *See Anderson*, 477 U.S. at 249, 255.  "[T]o survive the . . . motion, [the nonmovant]

need only present evidence from which a jury might return a verdict in his favor."  *Id.* at

257.  Further, the Court must resolve reasonable inferences and doubts in favor of the

nonmovant, and construe evidence in the light most favorable to the nonmovant.  *See*

*Hunt v. Cromartie*, 526 U.S. 541, 551–54 (1999).  However, "viewing the evidence in the

light most favorable to the nonmovant, it is not enough that the evidence be merely

colorable or anything short of significantly probative."  *Hall v. Bellmon*, 935 F.2d 1106,

1111 (10th Cir.1991) (internal quotations omitted); *see also Anaya v. CBS Broad. Inc.*, 626 F.

Supp. 2d 1158, 1197 (D.N.M. 2009) ("The mere existence of a scintilla of evidence will

not avoid summary judgment.").

## III.   WRONGFUL DISCHARGE CLAIM FOR VIOLATION OF PUBLIC POLICY (COUNT I)

Plaintiff's first cause of action states that Defendants took retaliatory actions

against him due to his assistance in opposing unlawful discrimination against his co-

workers.  *Doc. 3-1, Ex. A* at 13-14.  He further claims that his discharge had no legitimate

reason and was intended to stymie his actions defending the public good, in violation of

the New Mexico Human Rights Act ("NMHRA").  *Id.*

The NMHRA prohibits employers from "engag[ing] in any form of threats,

reprisal or discrimination against any person who has opposed any unlawful

discriminatory practice or has filed a complaint, testified or participated in any

proceeding under the Human Rights Act."  N.M. Stat. Ann. § 28-1-7.  The language of

this statute was intended to closely mirror its federal analog, Title VII of the Civil Rights

Act of 1964.  *Rodriguez v. New Mexico Dep't of Workforce Sols.*, 278 P.3d 1047, 1050 (N.M.

Ct. App. 2012).  Due to the similarities of these laws, the New Mexico Supreme Court

has instructed that "analysis of claims under the Human Rights Act is guided by the

federal courts' interpretation of unlawful discrimination under Title VII." *Id*.  *See also*

*Garcia-Montoya v. State Treasurer's Office*, 16 P.3d 1084, 1099 (N.M. 2001).  This Court will

thus analyze Plaintiff's claim under the federal standards for interpreting Title VII

actions.

A plaintiff can state a valid Title VII claim for retaliation by presenting either

direct or circumstantial evidence.  *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th

Cir. 2015).  Under the direct/mixed motives approach, the plaintiff may directly show

that the adverse employment decision was based on retaliatory animus. *See  Twigg v.*

*Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011). Unlike Title VII claims of

status-based discrimination, in which a plaintiff need only demonstrate that animus

was a motivating factor, a plaintiff seeking relief under a retaliation theory must

demonstrate that retaliatory animus was the "but-for" cause of an adverse employment

action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2532-33 (2013).  If a plaintiff

satisfies their burden to provide direct evidence of retaliation, "the burden shifts to the

employer to demonstrate that it would have taken the same action irrespective of the

retaliatory motive." *Twigg*, 659 F.3d at 998.

If the plaintiff cannot establish retaliation directly,  they may instead present

circumstantial evidence, evaluated under the three-part framework established in

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), to

prove retaliation indirectly.  *See Thomas,* 803 F.3d at 514; *Twigg,* 659 F.3d at 998.  As the

Tenth Circuit explained:

> Under this framework, the plaintiff bears the initial burden of establishing
> a *prima facie* case of retaliation by demonstrating that (1) he or she engaged
> in a protected activity, (2) he or she suffered a material adverse action, and
> (3) there was a causal connection between the protected activity and the
> adverse action. The burden then shifts to the employer to articulate a
> legitimate non-retaliatory reason for taking the adverse employment
> action before ultimately shifting back to the plaintiff to establish that the
> employer's explanation is pretextual—i.e., unworthy of belief.

*Thomas*, 803 F.3d at 514 (internal citations omitted).

## A.    Direct Evidence Approach

To establish a cause of action under the direct approach, a plaintiff must

"present[] proof of 'an existing policy which itself constitutes discrimination . . . .'"

*Tomsic v. State Farm Mut. Auto. Ins. Co.,* 85 F.3d 1472, 1477 (10th Cir. 1996) (quoting

*Ramsey v. City and County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990).  In this case, the

policy of NMPDD is unquestionably opposed to discrimination.  The New Mexico

Administrative Code states that NMPDD employment decisions must be made

"without regard to race, color, religion, national origin, ancestry, sex, sexual orientation,

age, or mental or physical disability . . . ."  N.M. Admin. Code 10.12.5.9 (B).  Further,

affidavits from Defendants Taylor and Cockman establish their acknowledgment of

NMPDD's nondiscrimination policy.  *See doc. 52-2*, Ex. C at 2; Ex. D at 2.  In response,

Plaintiff asserts that the Aztec Office employed a *de facto* policy of discrimination, as

several women and racial minorities were terminated from employment within a short period of time. *Doc. 3-1*, Ex. A at 8, 34. Plaintiff also asserts that comments made by Defendant Cockman directly exhibited racial animus against persons of Hispanic heritage.

While statements of discriminatory personal belief may be circumstantially probative, they are not direct evidence of discriminatory conduct. *See, e.g., Tomsic*, 85 F.3d at 1477; *Ramsey*, 907 F.2d at 1008. Evidence of a false reason for termination and close temporal proximity between a protected action and an adverse consequence also constitute only indirect evidence. *Twigg*, 659 F.3d at 1001-02. Thus, Plaintiff's case rests upon indirect evidence which must be evaluated pursuant to the *McDonnell Douglas* framework.

### B.  *McDonnell Douglas*/Indirect Evidence Approach

### I.  *Prima Facie* Case

As noted above, "the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation by demonstrating that (1) he or she engaged in a protected activity, (2) he or she suffered a material adverse action, and (3) there was a causal connection between the protected activity and the adverse action." *Id.* However, the Court notes that, in applying the *McDonnell Douglas* framework "[t]he burden of establishing a *prima facie* case is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

There appears to be no dispute as to the first two factors. "An employee engages in protected activity when he or she files an EEO claim . . . . [This protection] extends to testifying, assisting or participating in the proceedings arising out of an EEO claim as well." *Kelley v. City of Albuquerque*, 375 F. Supp. 2d 1183, 1212 (D.N.M. 2004). Participation in filing internal employment grievances alleging discrimination may also suffice. *See Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003). Plaintiff has produced substantial evidence demonstrating that he advised and assisted his co-workers Tsosie, Hatch, and Roe in pursuing various employment grievances, including EEOC complaints, alleging discrimination. *See, e.g. Doc. 3-2* at 2, 22-23, 27-28, 29-38; *Doc. 53* at 6; *Doc. 80* at 19-21. Defendants' responses to interrogatories confirm that Plaintiff was providing legal guidance and other assistance on these matters. *Doc. 80* at 14-15. Further, there is no dispute between the parties that Plaintiff received a poor employee evaluation (*doc. 3-2* at 13-21) was terminated from employment (*doc. 3-2* at 26), both of which are unambiguously adverse employment actions. *See Lee v. New Mexico State Univ. Bd. of Regents*, 102 F. Supp. 2d 1265, 1274 (D.N.M. 2000). Thus, the Court turns to the causal connection element.

A plaintiff can establish a causal connection by providing "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001). Due to the relatively lax burden imposed for creating a *prima facie*

showing, a very close temporal proximity may itself establish a presumption of causation, even without any additional evidence.  *See Annett*, 371 F.3d at 1241; *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997).  In applying this inference, the Tenth Circuit has drawn a *de facto* bright line that a period shorter than three months between the protected activity and the adverse employment action is sufficient by itself to establish causation for a *prima facie* case, while a period longer than three months is too attenuated without additional evidence.  *Compare Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999) (a "one and one-half month period between protected activity and adverse action may, by itself, establish causation.") *and Annett v. Univ. of Kansas*, 371 F.3d 1233, 1240 (10th Cir. 2004) (two-to-three month period sufficient for causation under prima facie case analysis), *with  Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three month delay alone does not establish causal connection), *and Conner*, 121 F.3d at 1395 (four month time lag insufficient without additional evidence).

Plaintiff has provided documentation that his engagement in protected activity occurred on a continuous basis within a short period of adverse action against him.  On April 18, 2013, Plaintiff began advising Hatch about options for reporting unlawful employment practices.  *Doc. 3-1*, Ex. A at 8; *doc. 53* at 6.  On April 29, he provided advice to Tsosie and Roe about obtaining union representation regarding incidents in the workplace.  *See Doc. 3-1*, Ex. A at 8; *doc. 53* at 6.  Plaintiff also states that he began to

complain to co-workers about illegal activities in the workplace after May 6, 2013.  *Doc. 3-1*, Ex. A at 9.

On July 1, Plaintiff drafted a letter in support of Tsosie's NMPDD employment grievance and advised her to file an EEOC intake questionnaire, which she did with his assistance on July 11, 2013.  *See Doc. 53* at 6; *doc. 3-2* at 2.  Also on July 11, Plaintiff allegedly advised Roe to draft a rebuttal letter to an allegedly falsified performance evaluation.  *Doc. 3-1*, Ex. A at 9.  One day later, Plaintiff received his performance evaluation and was called to a meeting to discuss said evaluation.  *Doc. 53* at 6; *doc. 3-2* at 13-21.  On July 18, 2013, he assisted Hatch in filing a rebuttal letter to a letter of counseling on the basis that it constituted an ongoing hostile work environment.  *Doc. 3-1*, Ex. A at 10; *doc. 3-2*, Ex. E.  According to Plaintiff, he also assisted Hatch in filing her own EEOC complaint on August 11, 2013.  *See Doc. 3-1*, Ex. A at 10; *Doc. 53* at 6.  Plaintiff was terminated on August 20, 2013.  *Doc. 3-2*, Ex. H.

In sum, all of Plaintiff's protected activities occurred within three months of the adverse employment review and the vast majority of activities, including the most significant assistance, occurred within the three month period directly preceding his termination.  Accordingly, the Court finds the temporal proximity sufficiently close to draw an inference of retaliatory motive satisfactory for a *prima facie* case.

11

## II.    Legitimate, Non-retaliatory Reason

Once a plaintiff has presented a *prima facie* case, the burden shifts to the

employer, who must then offer a legitimate, non-retaliatory reason for its decision to

take adverse action against the employee.  *Burdine*, 450 U.S. at 254.  This burden is

satisfied so long as an employer offers reasons that "*taken as true, would permit* the

conclusion that there was a nondiscriminatory reason for the adverse action."  *St.*

*Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).

Here, Defendants have submitted, through an employee evaluation, a plethora of

justifications for Plaintiff's dismissal relating to his attitude, treatment towards, and

interaction with co-workers, opposing attorneys, clients, and witnesses.  *Doc. 3-2*, Ex. D.

These stated reasons would certainly satisfy the second prong of indirect analysis.  *See,*

*e.g., Jones v. City of Coll. Park, GA*, 540 F. Supp. 2d 1300, 1318 (N.D. Ga. 2007)

(termination for disrespectful behavior was legitimate, nondiscriminatory reason);

*Tremalio v. Demand Shoes, LLC*, No. 3:12-CV-00357 VLB, 2013 WL 5445258, at *5 (D.

Conn. Sept. 30, 2013) (finding that defendant articulated legitimate reason for

termination due to employees negative, combative, and disrespectful attitude).  This is

especially true since, as a probationer, Plaintiff's employment was at-will and thus *any*

proffered reason not based on a protected activity would sufficiently justify an adverse

employment action.  *See* N.M. Admin. Code 1.7.11 (11/14/02).  In this case, Plaintiff has

explicitly admitted that Defendants' proffered reasons, if true, would constitute

legitimate nondiscriminatory justifications for termination.  *Doc.* 80 at 1-2.  The Court

thus concludes that Defendants have satisfied their burden to provide legitimate

reasons for termination and will proceed to the final inquiry of *McDonnell Douglas*.

### III.   Pretext

Once the employer has satisfied its burden to produce legitimate reasons for an

adverse employment action, "summary judgment is warranted unless the employee can

show there is a genuine issue of material fact as to whether the proffered reasons are

pretextual." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005).  "The Supreme Court

has advised that, in determining whether evidence of pretext can permit an inference of

[retaliation] and avoid summary judgment, relevant factors include 'the strength of the

plaintiff's prima facie case, the probative value of the proof that the employer's

explanation is false, and any other evidence that supports the employer's case and that

properly may be considered.'" *Bennett v. Windstream Comm., Inc.*, 792 F.3d 1261, 1268

(10th Cir. 2015) (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148-19

(2000)).  Plaintiff appears to rely on three types of evidence which have been found

relevant to establish pretext: (i) temporal proximity between a protected activity and

adverse employment action; (ii) falsity of the explanation given by an employer for

terminating a plaintiff; (iii) deviations from normal company procedure in taking an

adverse employment action.  *See Annett*, 371 F.3d at 1240 (temporal proximity); *Kendrick*

*v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (falsity); *Doebele v.*

13

*Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1138 n. 11 (10th Cir. 2003) (deviations from normal procedure).

a)   Insufficient Evidence of Knowledge

Plaintiff's argument that the criticisms in his evaluation were pretexts for his retaliatory termination fails before even reaching these three avenues of proof. He provides insufficient evidence from which a reasonable jury could find that the decision-makers involved in his evaluation and subsequent termination were aware of his protected activities. Since knowledge of the underlying activity is a necessary prerequisite of inferring motivation for future consequences, such is fatal to his attempt to establish pretext. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001); *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188-89 (10th Cir. 2002).

Defendants Taylor, Cockman, and Baur each state in their affidavits that they were unaware of his allegations of discrimination and protected activities. *See doc. 52-2*, Ex. C at 2, Ex. D at 2-3, Ex. E. at 1-2. Plaintiff does not sufficiently rebut this assertion to create a genuine dispute.

Certainly, Plaintiff presents no direct evidence that the named Defendants were informed of his protected activities by him or any other person. *See doc. 52* at 6; *doc. 52-1*, Ex. A at 6-9; *doc. 53* at 5-9; *doc. 69-1* at 1-3. Instead, Plaintiff relies on a weak chain of inferential evidence. He asserts that the office manager, Ms. Crook, and a paralegal, Mr. Workman, knew about his protected activities. *See doc. 53* at 7 ("Ms. Crook will testify

14

that Celesty Tsosie, Jeannie Hatch, and an attorney, Kindahl Roe, had formed an anti-management clique in the office, and that [Plaintiff] . . . may have been providing them legal advice against the best interests of his own employer."); *doc 80* at 15 ("[Mr. Workman] will testify concerning his knowledge of [Plaintiff]'s providing legal advice to difficult co-workers on claims against the NMPDD. . .").  Plaintiff does not contend, nor does any evidence establish, that either Crook or Workman were involved in his evaluation or in the decision to terminate him.  *See doc. 3-1*, Ex. A at 25-26; *doc. 53-1* at 9. Further, Plaintiff provides no evidence from anyone with personal knowledge that either Crook or Workman ever conveyed their knowledge of Plaintiff's protected activities to any named Defendant.  In fact, with respect to Mr. Workman's alleged knowledge, Plaintiff provides nothing but speculation to believe it transferred to the named Defendants.  *See doc. 80* at 10 (stating only that "[c]ommon sense would dictate that this information was conveyed to Cockman and Taylor.").  With respect to Ms. Crook, he simply asserts that, because she is the office manager whose office is next to Defendant Cockman's, she must have discussed with him her concerns about "Thomas May . . . providing [an anti-management clique] legal advice against the best interests of his own employer."  *Doc. 53* at 7.  First, the Court does not believe that Ms. Crook's position and responsibilities as office manager along with her office's proximity to Defendant Cockman's office are sufficient evidence from which a reasonable jury could infer communication of all Ms. Crook's knowledge about office personnel to Defendant

Cockman.  Second, Plaintiff has not even established Ms. Crook's knowledge of his protected activity.  As quoted above, the record reveals only her knowledge of "Thomas May . . . providing [an anti-management clique] legal advice against the best interests of his own employer."  *Doc. 53* at 7.  Such does not establish that she knew he was providing assistance to employees in pursuing grievances against racial and gender discrimination.  Thus, even assuming the named Defendants knew everything Ms. Crook knew, Plaintiff would fail to establish the necessary knowledge about his protected activities.[2]

> b)  Temporal Proximity

Even if one were to assume knowledge on behalf of the named Defendants, Plaintiff cannot establish that his poor performance evaluation was a pretext to enable his retaliatory dismissal.  Perhaps Plaintiff's strongest argument for establishing pretext is the temporal proximity between Plaintiff's protected activities and his evaluation/dismissal.  *See Annett*, 371 F.3d at 1240.  Indeed, the Court has found this proximity sufficiently close to establish a *prima facie* case.  *See supra* at 9-11.  However,

---

[2] Plaintiff alternatively claims that even if the individuals who took adverse action against him were not aware of his protected activities, liability could be maintained through constructive notice to the legal entity.  *Doc. 80* at 4-7.  However, when evaluating a claim of pretext relating to employment discrimination and retaliation, a court must focus on the actual knowledge and motivations of the individual decision-maker rather than constructive knowledge or assumed intent.  *Thomas v. Miami Veterans Med. Ctr.*, 290 F. App'x. 317, 320 (11th Cir. 2008); *see also Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 89 (2d Cir. 2005) (holding that the individuals who actually made the discharge decision must have knowledge of the protected status).

temporal proximity itself is insufficient to demonstrate pretext under the more demanding third prong of *McDonnell Douglas* analysis. *Annett*, 371 F.3d at 1241. In this case, the probativeness of the temporal proximity is particularly weak because Plaintiff was terminated just prior to expiration of his probationary period. Indeed, it is neither unlawful nor unusual for an employer to conduct evaluations and make ultimate employment decisions, without any prior discipline, near the end of an employee's probationary period. *See, e.g. Lobato v. New Mexico Env't Dep't*, 733 F.3d 1283, 1290 (10th Cir. 2013) (probationary employee may be lawfully terminated without the benefit of any progressive discipline at any point during the probationary period). An employer has a legitimate interest in removing a poorly performing worker prior to the vesting of administrative process granted to a full employee. *See Shaw v. United States*, 622 F.2d 520, 527 (Ct. Cl. 1980) (termination near the end of a probationary period does not imply bad faith on the part of a government employer). Therefore, while the termination occurred within three months of Plaintiff's protected activities, the suspiciousness of that fact is dramatically reduced by the fact that the termination occurred less than two months prior to the end of his probationary period. As such, the evidence of temporal proximity alone is insufficient to show that there is a genuine issue of material fact as to whether the proffered reasons are pretextual.

c)  Alleged Falsity

Plaintiff next argues that the falsity of his evaluation demonstrates pretext.

Evidence of falsity of an employer's non-retaliatory explanation can indirectly establish

pretext because "[i]n appropriate circumstances, the trier of fact can reasonably infer

from the falsity of the explanation that the employer is dissembling to cover up a

discriminatory purpose." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147

(2000). Defendants have provided an employee evaluation listing more than 20 job-

related deficiencies. *Doc. 3-2*, Ex. D. Given Plaintiff's probationary status at the time of

the evaluation, even a few of these deficiencies would justify Plaintiff's termination

based on his job performance, attitude and behavior towards others. Plaintiff argues

that the evaluation was concocted only to support his termination and has virtually no

basis in fact. *See, e.g., doc. 3-1* at 6, 12-13, 17-19; *doc. 53* at 3, 7; *doc. 80* at 1-3. In support of

his claim of falsity, Plaintiff relies almost exclusively on his own bald assertions that the

vast majority of claimed deficiencies are fictitious. *See Hall*, 935 F.3d at 1111

(nonmovant's affidavits must be based upon personal knowledge and set forth facts

that would be admissible in evidence; conclusory and self-serving affidavits are not

sufficient). However, Plaintiff's evidence of falsity is insufficient to show that there is a

genuine issue of material fact as to whether the proffered reasons are pretextual.

First, while Plaintiff asserts that many aspects of the evaluation are fabricated, he

concedes, either explicitly or implicitly, several criticisms in his evaluation regarding his

18

conduct which include: making disparaging comments towards a social worker, subpoenaing witnesses in domestic violence cases without apprising the witnesses ahead of time, engaging in inappropriate personal attacks towards a witness, failing to administratively close out cases in a timely fashion, and recommending clients to treatment programs for which they were not eligible due to his insufficient knowledge of court diversion programs. *See doc. 53* at 16-20. As a probationary public defender, these points would be sufficient on their own to justify his termination. Given this fact, it is unclear why Defendants would need to knowingly fabricate the other evaluative assertions if termination was their goal.

Second, Plaintiff's own responses to his employer's urging that he approach opposing counsel and parties diplomatically rather than confrontationally make evident his indifference towards these goals and resistance to correction. *See doc. 53* at 17 (responding to criticism about referring in closing argument to domestic violence complainant as a "bum" and a "drunk" by simply stating "[a]ttorneys have different styles."); *doc. 53* at 18 (stating the he does not "look for fights but I don't run from them either" in response to advice on the need to take practical approaches to clients problems, rather than making every case a fight); *doc. 53* at 19 (acknowledging awareness of the office philosophy to be diplomatic, but stating that he found it "more

fruitful" to embrace the alternative to "take [an opposing party] to trial").[3]  This evidence corroborates several portions of the evaluation and supports Defendants' explanation that the decision to terminate Plaintiff was based on his performance and behavior, rather than as retaliation for any protected activity.

Third, despite having the burden of presenting evidence from which a reasonable jury could find pretext, Plaintiff brings forth no evidence beyond his self-serving affidavits that any particular allegation of the evaluation is false.  This failure is particularly notable where, as here, many of the allegations are based on or supported by objective events to which there would be obvious witnesses.  For example, the evaluation claimed that Plaintiff's repeated allegations of incompetence, bad faith or misconduct by prosecutors and probation officers led to a poor relationship with those officials which impacted his ability to negotiate appropriate plea agreements for his clients.  *Doc. 3-2*, Ex. D at 3.  Plaintiff's response is his bald statement that "I have a harmonious relationship with the prosecutor's office . . . ."  Doc. 53, Ex. D at 3.  However, he provides no evidence from any other person to corroborate his claim of

---

[3] There can be little doubt that attorneys have different styles.  Indeed, an aggressive and confrontational approach apparently preferred by Plaintiff can be an effective approach for a criminal defense attorney.  However, at the relevant time, Plaintiff was working for, and under the supervision of, District Defender Matthew Cockman.  Within the bounds of ethical rules, Mr. Cockman had the authority to demand a less abrasive approach of his attorneys.  Mr. Cockman believed that as "Public Defenders, we are called to a higher standard – higher than even that of private attorneys.  Our ways and our words must reflect the highest standards of integrity and professionalism."  *Doc. 53* at 17.  While Plaintiff does not here dispute Mr. Cockman's authority to set standards within his office, his derisive response to this assertion was "[t]his statement is subjective and unclear from an evaluative perspective.  Please clarify your allegation so that I may properly respond."  *Id.*

harmony.  *See also doc. 3-2*, Ex. D at 5-6 (denies guaranteeing client's family member that client would go to treatment but provides no evidence from any other witness to the relevant events); *doc. 53* at 5, 7 (denies challenging ADA Kip Keil to a fight to settle professional differences but provides no evidence from other witness such as ADA Keil); *doc. 53* at 7, 12 (denies physically threatening an officer after verbal confrontation in Judge Sharer's courtroom but provides no evidence from any other witness such as the officer or the judge).

Under these circumstances, Plaintiff's evidence of falsity is insufficient to show that there is a genuine issue of material fact as to whether the proffered reasons are pretextual.[4]

---

[4] Exhibits to Plaintiff's Complaint included what purported to be responses by other employees of Defendants to their own evaluations which asserted that criticisms leveled against them were false.  *See doc. 3-2* at 22-23, 29-38.  Although Plaintiff does not articulate this argument, one could use evidence in that vein to establish a pattern of false evaluations to be used as pretext and thus bolster Plaintiff's claims of falsity.  However, in this case, the allegations of the other employees do not create an issue of genuine dispute.  First, the documents, as mere attachments to a pleading, are not properly within the summary judgment record.  *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) ("[T]he nonmoving party has the burden of showing a genuine issue for trial, by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." (citations and quotations omitted)).  Second, as with his own, Plaintiff fails to present any evidence that the criticisms in the other employees' evaluation were false.  He presents only their bald allegations of falsity.  *See, e.g., Pippin v. Burlington Res. Oil and Gas Co.*, 440 F.3d 1186, 1198 (10th Cir. 2006) (evidence based on small sample size which fails to eliminate nondiscriminatory explanations for treatment is not sufficient to demonstrate pattern of discrimination).  This absence is particularly problematic here where it was Plaintiff who advised and assisted them to take that precise approach in response to adverse actions.  *See Doc. 3-1*, Ex. A at 9-10.  As such, the allegations contained in those documents do not aid Plaintiff in creating a genuine dispute regarding pretext.

d)  Deviations from Policy

Finally, Plaintiff alleges that Defendant Cockman acted in violation of NMPDD

policy by failing to discuss with Plaintiff a complaint regarding his alleged

unprofessionalism in court before Judge Sharer.  *Doc. 80* at 7, 10-11, 18.  While he does

not significantly expound on this argument, one could use that evidence to bolster his

pretext argument if Defendants acted contrary to a written policy.  *See Doebele,* 342 F.3d

at 1138 n. 11.  However, "deviations from normal company procedures" provide

support for an assertion of pretext only when they can be considered "disturbing

procedural irregularities."  *Id*.  Even assuming Defendant Cockman's failure to

approach Plaintiff with the complaint violated policy, Plaintiff's allegation falls far short

of this standard.  First, Plaintiff has alleged only one relatively insignificant policy

violation.  Second, the complaint came after Plaintiff had already been counseled for

unprofessional conduct in his evaluation from which "he walked out of."  *Doc. 80* at 17.

Therefore, it is particularly understandable that Defendants would not have considered

it worthwhile to discuss the new complaint of unprofessional conduct.  In any event,

under these circumstances, this alleged policy violation is insufficient to show that there

is a genuine issue as to whether the proffered reasons were pretextual.

e)  Conclusion Regarding Pretext

In conclusion, Plaintiff has failed to demonstrate a genuine issue as to whether

the proffered reasons for his termination were pretextual.  First, he provides insufficient

evidence from which a reasonable jury could find that the decision-makers involved in his evaluation and subsequent termination were aware of his protected activities. Even if one were to assume knowledge on behalf of the named Defendants, Plaintiff cannot establish that his poor performance evaluation was a pretext to enable his retaliatory dismissal. The arguments based on temporal proximity, alleged falsity, and policy violation are, taken separately and together, insufficient for a reasonable jury to conclude that the negative evaluation was a pretext for a retaliatory discharge.

As such, Defendants are entitled to summary judgment on the claim of wrongful discharge (Count I).

## IV.     TORT CLAIMS FOR DEFAMATION (COUNTS II & III)

Plaintiff next alleges common law defamation based on the contents of Plaintiff's employee evaluation and subsequent letter of dismissal. *Doc. 3-1*, Ex. A at 14-17; *see also doc. 3-2*, Ex. D, H. Where a federal court evaluates a common law defamation claim under diversity or supplemental jurisdiction, it applies state law towards the allegedly tortious conduct. *See Schwartz v. Am. Coll. of Emergency Physicians*, 215 F.3d 1140, 1144-47 (10th Cir. 2000) (applying New Mexico law to defamation claim in diversity jurisdiction); *Hoffman v. Martinez*, 92 F. App'x 628, 633 (10th Cir. 2004) (analyzing defamation claim in supplemental jurisdiction under New Mexico state law). As such, New Mexico state law governs analysis of this claim.

New Mexico's Tort Claims Act grants immunity to public employees while acting within the scope of duty. *See* N.M. Stat. Ann. § 41-4-4A (1978). "[S]cope of duty" is defined by the statute as performing any duties that a public employee is requested, required or authorized to perform by the governmental entity. N.M. Stat. Ann. § 41-4-3G (1978). It is clear that a supervisor within the Public Defender's office is considered a public employee and that the ability to evaluate employees falls within the scope of their job responsibilities. *See* N.M. Stat. Ann. § 31-15 (1978); N.M. Admin. Code 1.7.9 (requiring public sector managers to conduct performance appraisals of supervised employees). Therefore, Defendants fall under the general scope of immunity from liability for defamation under New Mexico law and Plaintiff has not argued that his claims fall within one of the statutory exceptions to immunity. *See* N.M. Stat. Ann. § 41-4-5 – § 41-4-12 (1978).

Plaintiff responds to this assertion of immunity by citing to a district court case which states that immunity from a defamation suit requires an official act in good faith. *See doc.* 53, at 3-4 (citing *Naab v. Inland Container Corp.*, 877 F. Supp. 546, 550-51 (D. Kan. 1994)). Thus, he implies that his claims accusing Taylor and Cockman of engaging in intentional and malicious misrepresentation in his evaluation defeat the general presumption of immunity. *Doc.* 53, at 3-4. However, *Naab* is of no persuasive value, as it specifically interprets a good-faith requirement found under Kansas state immunity law. 877 F. Supp. at 551. In contrast, New Mexico has interpreted its immunity statute

to apply "even if the employee's acts are fraudulent, intentionally malicious, or even criminal," so long as there is some connection between the employee's actions and the duties required or authorized to perform. *Seeds v. Lucero*, 113 P.3d 859, 862 (N.M. Ct. App. 2005) (emphasis omitted); *see also Celaya v. Hall*, 85 P.3d 239, 245 (N.M. 2004) ("[The New Mexico Tort Claims Act] clearly contemplates including employees who abuse their officially authorized duties, even to the extent of some tortious and criminal activity."). Thus, even if the Court assumes *arguendo* that Plaintiff's allegations of bad faith are true, Defendants would be entitled to immunity as public officials. As Defendants are immune from liability under state law, Counts II and III of Plaintiff's Complaint fail to state a claim against them as a matter of law.

## V.    42 U.S.C. § 1983 CLAIM FOR DEFAMATION (COUNT IV)

Plaintiff next contends that he was deprived of his constitutionally-protected interests through false and defamatory statements made by his supervisors, Taylor and Cockman. *Doc. 3-1, Ex. A* at 20. This claim stems from the contents of Plaintiff's employee evaluation and letter of dismissal as well as potential subsequent transmissions of these documents to prospective employers. *Doc. 3-1*, Ex. A at 18-20. Upon review, the Court determines that this claim also fails as a matter of law.

A claim of defamation is not itself actionable under § 1983. *See Estate of Ricci v. Salt Lake City Corp.*, 180 F. App'x 810, 813 (10th Cir. 2006); *Salazar v. City of Albuquerque*, No. CIV 10-0645 JB/ACT, 2014 WL 6065603, at *25 (D.N.M. Oct. 27, 2014). Rather, the

underlying conduct must result in a deprivation of a constitutional interest in order to justify recovery under the statute.  *See* 42 U.S.C. § 1983.  Here, Plaintiff claims the defamatory conduct denied him his right to continued employment and his protected interest in his professional reputation.  *Doc. 3-1*, Ex. A at 20.

### A.      Continued Employment Interest

"[D]ischarge from employment is actionable under § 1983 if an employee possesses a protectable property or liberty interest in his employment.  In the employment context, a property interest is a legitimate expectation in continued employment.  We determine whether such a property interest exists by looking at state law."  *Hesse v. Town of Jackson*, 541 F.3d 1240, 1245 (10th Cir. 2008) (citations and quotations omitted).  Under New Mexico state law, "[a]t-will employment 'can be terminated by either party at any time for any reason or no reason, without liability.'" *Gosline v. Sisneros*, 361 F. App'x 8, 11 (10th Cir. 2010) (quoting *Hartbarger v. Frank Paxton Co.*, 857 P.2d 776, 779 (N.M. 1993)).  Here, Plaintiff's signed "Acknowledgment of Conditions of Appointment" clearly stated that he was appointed to a one-year probationary term of employment.  *Doc. 52-1* at 8-9.  The Tenth Circuit has held that, under New Mexico law, an unambiguous indication contained in an employment manual that an employee's status is at-will weighs strongly in favor of that presumption.  *See Gosline*, 361 F. App'x at 12.

As a matter of state law, "[p]robationers and employees in emergency or temporary status may be suspended, demoted, or dismissed effective immediately with written notice and without right of appeal to the board."  N.M. Admin. Code 1.7.11 (11/14/02).  Indeed, a one-year requirement of probationer status for public employees is codified by statute.  N.M. Stat. Ann. §§ 10-9-13(E); *see also* N.M. Admin. Code 1.7.11 (CC).  As such, Plaintiff had no constitutional interest in continued employment necessary to enable a § 1983 claim for defamation.  *See Cockrell v. Bd. of Regents of New Mexico State Univ.*, 983 P.2d 427, 428 (N.M. Ct. App. 1999).

### B.    Reputation Interest

As a general principle, reputational damage suffered from an allegedly defamatory publication, no matter how egregious, does not support a § 1983 cause of action because it does not concern a protected constitutional interest.  *Paul v. Davis*, 424 U.S. 693, 712 (1976); *McGhee v. Draper*, 639 F.2d 639, 643 (10th Cir. 1981).  In some cases, however, a reputational harm may trigger a liberty interest when entangled with a more tangible interest such as employment.  *Id*.  Accordingly, the Tenth Circuit has carved a narrow exception in situations where "a public employer takes action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities."  *Melton v. City of Oklahoma City*, 928 F.2d 920, 927

(10th Cir. 1991) (en banc).  In order to establish a recoverable liberty interest claim,

Plaintiff must satisfy each of the following elements:

> First, to be actionable, the statements must impugn the good name,
> reputation, honor, or integrity of the employee. Second, the statements
> must be false. Third, the statements must occur in the course of
> terminating the employee or must foreclose other employment
> opportunities. And fourth, the statements must be published. These
> elements are not disjunctive, all must be satisfied to demonstrate
> deprivation of the liberty interest.

*Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994) (citations omitted).

Here, the parties disagree as to the veracity and effect of the statements

contained in Plaintiff's evaluation and notice of dismissal.  However, these issues need

not be resolved, as plaintiff cannot satisfy the third or fourth elements.  A publication

harms the reputational interest in employment opportunities only "[w]hen the

termination is accompanied by *public dissemination of the reasons for dismissal*, and those

reasons would stigmatize the employee's reputation or foreclose future employment

opportunities.  *Sullivan v. Stark*, 808 F.2d 737, 739 (10th Cir. 1987) (emphasis added).  By

contrast, no deprivation of a liberty interest occurs during "the discharge of a public

employee whose position is terminable at the will of the employer when there is no

public disclosure of the reasons for the discharge."  *Bishop v. Wood*, 426 U.S. 341, 348

(U.S. 1976).

Plaintiff has provided no evidence that the contents of these documents were

ever made public prior to his introduction of them as exhibits to his suit.  Plaintiff's own

complaint merely advances the conclusory allegation that Defendants or their agents contacted "unknown individuals" at "unknown" dates to convey the substance of his dismissal letter to prospective employers.  *Doc. 3-1, Ex. A* at 19.  Claims based on speculation rather than personal knowledge do not create an issue of material fact.  *See Murray*, 45 F.3d at 1422 *("To survive summary judgment, nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence. . .")* (internal quotation marks omitted); *Sisneros v. Fisher*, 685 F. Supp. 2d 1188, 1200 (D.N.M. 2010) ("In responding to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion. . .") (internal quotation marks omitted).   Thus, Plaintiff's § 1983 claim for defamation fails to reach the threshold necessary to create a genuine dispute of material fact under a reputational harm theory and must be dismissed.

## VI.   42 U.S.C. § 1983 CLAIM FOR FIRST AMENDMENT RETALIATION  (COUNT VI)

Plaintiff next alleges that he was terminated in unlawful retaliation for the exercise of his first amendment right to speech.  In particular, he claims that his outspokenness on a matter of public concern, perceived gender and racial discrimination against his co-workers, caused his termination.

As an initial matter, Defendants' argument that a § 1983 action is not the appropriate forum to address a claim of first amendment retaliation absent a continued employment interest is incorrect.  *See Doc. 52* at 6.  Courts regularly evaluate claims of

first amendment retaliation in the context of a public employment relationship under §

1983.  *See, e.g., Morris v. City of Colorado Springs*, 666 F.3d 654, 660-63 (10th Cir. 2012);

*Jantzen v. Hawkins*, 188 F.3d at 1247, 1256–58 (10th Cir. 1999); *Prager v. LaFaver*, 180 F.3d

1185, 1191 (10th Cir. 1999).  Further, it is not necessary to establish a liberty interest in

continued employment since, unlike Plaintiff's defamation claim,  the First Amendment

imposes an independently-protected constitutional interest which forms the basis of a §

1983 challenge.  *See Connick v. Myers*, 461 U.S. 138, 142 (1983) (holding, in a § 1983 suit,

that "it has been settled that a state cannot condition public employment on a basis that

infringes the employee's constitutionally protected interest in freedom of expression").

Thus, the Court will proceed to determine if a factual dispute precludes judgment as a

matter of law on this claim.

To analyze a first amendment retaliation claim in the context of an adverse

employment action by a government employer, federal courts apply "what we have

termed the *Garcetti/Pickering* test." *Seifert v. Unified Gov't of Wyandotte Cty./Kansas City*,

779 F.3d 1141, 1151 (10th Cir. 2015); *see generally Garcetti v. Ceballos*, 547 U.S. 410 (2006);

*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). As the Tenth Circuit explained, this test

involves a five-part inquiry:

> (1) whether the speech was made pursuant to an employee's official
> duties; (2) whether the speech was on a matter of public concern; (3)
> whether the government's interests, as employer, in promoting the
> efficiency of the public service are sufficient to outweigh the plaintiff's free
> speech interests; (4) whether the protected speech was a motivating factor
> in the adverse employment action; and (5) whether the defendant would

have reached the same employment decision in the absence of the
protected conduct.

*Trant v. Oklahoma,* 754 F.3d 1158, 1165 (10th Cir.2014) (internal quotation marks

omitted).

Turning to the first element, the Supreme Court has stated that "when public

employees make statements pursuant to their official duties, the employees are not

speaking as citizens for First Amendment purposes, and the Constitution does not

insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. The

determination of whether speech is made in an official capacity is a practical one

determined by whether the speech was commissioned by an employer and contributes

to an employee's performance of their official duties. *See Seifert*, 779 F.3d at 1151; *Thomas*

*v. City of Blanchard,* 548 F.3d 1317, 1323 (10th Cir.2008). It is clear that Plaintiff's speech

in this instance was not made pursuant to his official responsibilities. Plaintiff's job

duties involved assisting the department in providing representation to indigent

defendants in criminal cases and performing various tasks in furtherance of that duty.

*See, e.g.,* N.M. Stat. Ann. § 31-15-10. He was not hired to investigate and report

wrongdoing or unlawful conduct by his employer or assist others in doing so. Further,

his speech was not limited to his own chain of command, but involved complaints to

the office generally as well as assisting in filing official grievances. *See doc. 3-1*, Ex. A at

8-12. Thus, the Court concludes that Plaintiff was speaking as a private citizen subject

to the protections of the First Amendment. *See Reinhardt v. Albuquerque Pub. Sch. Bd. of*

*Educ.*, 595 F.3d 1126, 1135-36 (10th Cir. 2010) ("Post *Garcetti*, this court has generally identified two factors that suggest an employee was speaking as a private citizen rather than pursuant to her job responsibilities: (1) the employee's job responsibilities did not relate to reporting wrongdoing and (2) the employee went outside the chain of command when reporting the wrongdoing.").

With regard to the second and third elements, the Supreme Court has made clear that speech regarding an employer's racially-discriminatory policy involves a matter of public concern. *Connick*, 461 U.S. at 146. Additionally, the Tenth Circuit has held that employee speech serves particular importance outweighing a general interest in maintaining an efficient workplace where such speech "was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of governmental officials in the conduct of their official duties." *Koch v. City of Hutchinson*, 847 F.2d 1436, 1445 (10th Cir. 1988). Thus, viewing evidence in the light most favorable to the nonmovant would require this court to find in Plaintiff's favor on both of these factors, absent any specific justification by Defendants as to why the speech was especially disruptive.

However, Plaintiff cannot establish the fourth element. Defendants assert that the protected speech was not a motivating factor in the adverse employment actions taken against Plaintiff because his supervisors were not aware of the speech alleging discrimination. *Doc. 52* at 6. In addressing this assertion above, this Court explained that Plaintiff's evidence did not adequately dispute the factual assertions in the

32

affidavits of Taylor, Cockman, and Baur, as each stated that they were each unaware of any allegations of discrimination. *See doc. 52-2*, Ex. C at 2, Ex. D at 2-3, Ex. E. at 1-2. Because he provides insufficient evidence from which a reasonable jury could find that the decision-makers involved in his evaluation and subsequent termination were aware of his protected speech, Plaintiff has failed to establish a case that Defendants were even aware of, let alone driven by, Plaintiffs protected speech activity.

Even if Plaintiff could succeed on the first four elements, he cannot succeed on the fifth element. Defendants are entitled to summary judgment on this claim if undisputed evidence demonstrates that they would have taken the same action against Plaintiff even in the absence of protected speech. *See Worrell*, 219 F.3d at 1206. Under this standard, factual disputes regarding the existence of an improper motive do not preclude summary judgment so long as such motivation is not the but-for cause of an employee's termination. *See Trant*, 754 F.3d at 1167-68. As noted above, Defendants have provided, through an employee evaluation, a number of explanations for Plaintiff's dismissal relating to his treatment towards and interaction with co-workers, opposing attorneys, clients, and witnesses. *Doc. 3-2*, Ex. D. Plaintiff admits to several of these accusations, including calling a social worker "lazy," accusing a witness of being a "bum" and a "drunk" during trial, and referring his clients to treatment programs for which they were ineligible due to his unsatisfactory familiarity with court diversion programs. *See doc. 53* at 16, 17, 19-20. This uncontested evidence provides ample

33

justification to explain Plaintiff's discharge regardless of whether or not Defendants were aware of or motivated by Plaintiff's protected speech. *See, Jones*, 540 F. Supp. 2d at 1318.

Thus, Plaintiff has failed to provide sufficient evidence to create a factual dispute as to the fourth and fifth elements of his claim for First Amendment retaliation, and summary judgment on that claim is appropriate as a matter of law.

## VII.   42 U.S.C. § 1981 CLAIM FOR RETALIATION (COUNT VIII)

Plaintiff also claims in his complaint that the actions taken by Defendants deprived him of his right to make and enforce contracts in violation of 42 U.S.C. § 1981. The basis of this claim appears two-fold. First, Plaintiff alleges that Defendants took adverse action against him on the basis of his race. *Doc. 3-1, Ex. A* at 23-24. Alternatively, Plaintiff contends that the actions taken against him were motivated by retaliation for his role in combating racial discrimination against his co-workers. *Id*. The Court addresses each theory in turn.

### A.   Racial Animus

To state a claim under § 1981, a plaintiff must show: (1) that he is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in the statute (i.e. make and enforce contracts)." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). Both parties concede for the purposes of summary

judgment that Plaintiff is a member of a protected racial minority class.  *See doc* 53 at 3;

*doc. 52* at 7, fn. 2.  Thus, the first element is satisfied.  Additionally, the Court is not

persuaded by Defendants' argument on the third element.  Defendants state that

Plaintiff had no right to make or enforce a contract with NMPDD because, as a

probationer, he was not considered an employee and did not possess a contract for

employment.  *Doc. 52* at 7.  This assertion is contradicted by the compensation

agreement entered between Plaintiff and NMPDD which specifically refers to Plaintiff

as an "Employee."  *Doc. 53* at 10.  New Mexico State Personnel Board Regulations also

define a probationer as an "employee in the classified service who has not completed

his one year probationary period."  N.M. Admin. Code 1.7.1.7 (CC) (03/31/06).  Thus, it

is clear that Plaintiff's compensation agreement is an employment contract for purposes

of the third element in a § 1981 analysis, regardless of his status as a probationer.  *See*

*Perry v. Woodward*, 199 F.3d 1126, 1132-34 (10th Cir. 1999) (holding that an at-will

employee may maintain a cause of action under a § 1981).

Upon examination of the factual allegations presented, Plaintiff falls short on the

second prong.  To prevail on this element of a § 1981 action, a plaintiff must establish

that the defendant's conduct was motivated by race and was intentionally

discriminatory.  *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 293 (1976);

*General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982).  In order to

survive a motion for summary judgment, "the plaintiff must specifically allege the

events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent." *Yusuf v. Vassar College,* 35 F.3d 709, 713-14 (2d Cir. 1994) (internal citations omitted).

Here, Plaintiff has provided no evidence, beyond the cursory recitations of his complaint, that the decision to terminate him was motivated by animosity on the basis of his race. Indeed, Plaintiff's sole specific articulation is his allegation, purportedly supported by testimony from his co-workers, that Defendant Cockman called him "Billy Dee," a comment which he claims proves "an undisclosed mindset of bigotry." *Doc. 80* at 3. However, Plaintiff offers no explanation on how this sole remark conveys a mindset of bigotry and concedes that it is "not proximately tied to the adverse employment action taken." *Id.*

While Plaintiff provides particular examples of how Defendants allegedly took action in denying his co-worker a pay raise after inquiring about her Hispanic ethnicity, similar examples in relation to his own treatment are conspicuously absent from his evidence. On the contrary, Plaintiff has asserted that no adverse employment action was taken against him until such time as he began to assist his co-workers in filing grievances about their treatment. *See doc. 53* at 5-7 (stating that no record of discipline existed prior to Plaintiff's June evaluation and noting close temporal relationship between his assistance of co-workers and his evaluation); 21-22 (interrogatories requesting admission that no discipline occurred until after Defendants found out about

Plaintiff's actions in assisting his co-workers with EEOC complaints); *doc. 53-1* at 4-13 (interrogatories requesting dates of disciplinary action preceding the evaluation).  Thus, Plaintiff is unable to establish a *prima facie* case, based solely on a single remark, under the theory that Defendants discriminated against him on the basis of his race.  *See Hall*, 935 F.2d at 1111 ("it is not enough that the evidence be merely colorable or anything short of significantly probative") (internal quotations omitted).

**B.    Retaliation for Activities Opposing Discrimination**

As an alternative to establishing discrimination on the basis of one's own race, a plaintiff may establish that adverse employment action was taken against them in retaliation for activities assisting another individual to combat racial discrimination. *CBOCS W., Inc. v. Humphries,* 553 U.S. 442, 457 (2008).  However, as with Plaintiff's claim in Count I, the standard for establishing a cognizable retaliation claim is identical under § 1981 and Title VII of the Civil Rights Act of 1964.  *See Roberts v. Roadway Express, Inc.,* 149 F.3d 1098, 1110 (10th Cir. 1998).  As the Court discussed in Section IV, Plaintiff has failed to establish direct evidence of a policy or custom of discrimination and has not provided sufficient evidence to create a factual dispute as to whether Defendants' legitimate proffered reasons for terminating him were pretextual.  *See supra,* Section IV. For these reasons, summary judgment is proper for this claim as well.

**VIII.  42 U.S.C. § 1983 CLAIM FOR 14TH AMENDMENT UNEQUAL TREATMENT (COUNT IX)**

Plaintiff's Ninth Count relates to a deprivation of his constitutional right to equal protection established by the Fourteenth Amendment.  *Doc. 3-1, Ex. A.* at 24-25.  Plaintiff contends that, due to his status as an African American, he was not given the benefit of progressive discipline prior to his termination; a privilege purportedly afforded to similarly-situated Caucasian employees.  *Id.*

It must again be noted at the outset that Defendants' continued insistence that a § 1983 suit cannot be maintained by an at-will employee without a continuing employment interest is incorrect.  *See doc. 52* at 8.  This is because, while no at-will employee has a specific entitlement to progressive discipline, a public employer is prohibited by the equal protection clause from selectively extending such benefit on the basis of race.  *See, e.g., Ramirez v. Dep't of Corr., Colo.,* 222 F.3d 1238, 1243 (10th Cir. 2000) (holding that, in the context of adverse employment actions, racial discrimination in violation of the equal protection clause creates an independent cause of action under § 1983).  However, while the at-will nature of employment is not a *per se* bar to an equal protection claim, that the Supreme Court has foreclosed §1983 recovery in the public employment context under the class-of-one theory.  *See Engquist v. Oregon Dep't of Agr.,* 553 U.S. 591, 591-93 (2008).  Accordingly, unlike an equal protection challenge to a statute or other government action, a claim regarding public employment will not succeed unless a plaintiff can demonstrate that his discrepancy in treatment was based

38

specifically on membership in a protected class (race, national origin, etc.), rather than for any other arbitrary, vindictive, or malicious reasons.  *Id.* at 591.

As noted above, Plaintiff has provided no evidence to support his perfunctory allegation that adverse employment actions against him were the result of discrimination towards his own race or national origin.  Indeed, Plaintiff reiterates his contention that adverse action was taken against him in response to his assisting co-workers in filing their own employment grievances.  *See doc. 53* at 5-7.  Even taken in the light most favorable to the nonmovant, Plaintiff characterizes Defendants' conduct as retaliatory rather than racially discriminatory.  Thus, Plaintiff does not sufficiently demonstrate that any disparate treatment by Defendants was motivated by his membership in a specific racial class.  *See Sims v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.*, 120 F. Supp. 2d 938, 959 (D. Kan. 2000) (plaintiff cannot premise her § 1983 equal protection claim on alleged retaliation but must show that she was discriminated against because of membership in a suspect class).  Accordingly, even if Plaintiff is correct regarding disparate treatment towards him, the decision to not extend the benefit of progressive discipline, no matter how arbitrary or malicious, does create a dispute of material fact precluding Defendants' entitlement to summary judgment on this claim.

IX.     CONSPIRACY CLAIM FOR CIVIL DEFAMATION AND RETALIATION (COUNT X)

Plaintiff alleges that Defendants Cockman and Taylor entered into a conspiracy to deprive him of employment through defamatory statements in retaliation for his outspokenness against policies of discrimination. *Doc. 3-1*, Ex. A at 25-26. This Court evaluates tort claims for civil conspiracy under applicable state law. *See, e.g., Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1198 (D.N.M. 2013) (applying New Mexico state law to a common law conspiracy cause of action).

Under New Mexico law, civil conspiracy requires a showing "(1) that a conspiracy between two or more individuals existed; (2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and (3) that the plaintiff was damaged as a result of such acts." *Silva v. Town of Springer*, 912 P.2d 304, 310 (N.M. Ct. App. 1996). However, "[u]nlike a conspiracy in the criminal context, a civil conspiracy by itself is not actionable, nor does it provide an independent basis for liability unless a civil action in damages would lie against one of the conspirators." *Ettenson v. Burke*, 17 P.3d 440, 445 (N.M. Ct. App. 2000) (internal citations and quotation marks omitted). "Without an actionable civil case against one of the conspirators, however, an agreement, no matter how conspiratorial in nature, is not a separate, actionable offense." *Id.*

As discussed above, New Mexico's Tort Claims Act grants immunity to public employees acting within the scope of duty. *See* N.M. Stat. Ann. § 41-4-4A (1978). Such

immunity has been applied specifically to state conspiracy claims. *See Seeds*, 113 P.3d at 859. Here, all alleged conspirators were public employees who were authorized to conduct employee evaluations and terminate the employment of the probationers under their supervision. *See* N.M. Stat. Ann. § 31-15 (1978); N.M. Admin. Code 1.7.9. Thus, Defendants are immune from suit for all underlying wrongful conduct regardless of improper motive, criminality, or abuse of authority. *See Seeds*, 113 P.3d at 862; *Celaya*, 85 P.3d at 245. Accordingly, summary judgment is proper on this claim.

## X.     42 U.S.C. § 1985(3) CONSPIRACY CLAIM FOR INTERFERENCE WITH CIVIL RIGHTS (COUNT XI)

Plaintiff next asserts that Cockman and Taylor, acting out of racial animus, conspired to deprive him of his equal protection rights under the Fourteenth Amendment in violation of 42 U.S.C. § 1985(3). *Doc. 3-1*, Ex. A at 26-27. Plaintiff specifically contends that the conspiracy included disparate treatment based on race, defamation, First Amendment infringement, and retaliation. *Id.* at 27. Plaintiff claims that these actions resulted in deprivation of his privileges as a United States citizen. *Id.*

By its text, 42 U.S.C. § 1985(3) creates a cause of action against two or more persons who conspire for the purpose of depriving any person or class of equal protection of the laws or of equal privileges and immunities under the laws. The scope of this provision has been narrowly interpreted and does not create a cause of action for conspiracies concerning First Amendment deprivations, substantive due process claims involving employment interests, or Title VII employment retaliation. *See e.g. Egan v.*

41

*City of Aurora*, 291 F.2d 706, 707-08 (7th Cir. 1961) (§ 1985(3) does not create cause of action based on conspiracy to deprive party of right to freedom of speech); *Dunn v. New Jersey Transit Corp.*, 681 F. Supp. 246, 251 (D.N.J. 1987) (in the context of a public employee discharge, "§ 1985(3) does not provide a remedy for a conspiracy to deny the right to due process."); *Rogler v. Biglow*, 610 F. Supp. 2d 103, 105 (D.D.C. 2009) (allegations of retaliation for participation in an EEOC grievance do not state a claim for § 1985 conspiracy).

In addition to these limitations, both the Supreme Court and Tenth Circuit have specifically held that § 1985(3) applies "only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971). Consequently, the only theory under which Plaintiff may state a claim is that the conspiracy between Defendants Taylor and Cockman was based upon on racial animus towards a class of which Plaintiff is a member. *Wilhelm v. Cont'l Title Co.*, 720 F.2d 1173, 1175 (10th Cir. 1983) (holding that for a claim under § 1985, the conspiracy against plaintiff must be because of class membership). However, Plaintiff fails to provide evidence sufficient to state a *prima facie* case under this theory.

As discussed in Sections VII-VIII above, Plaintiff has provided no specific factual allegations supporting the conclusion that his discharge was motivated by racial animus towards his race or national origin. *See generally, doc. 3-1* at 7-12; *doc. 53* at 5-8.

On the contrary, Plaintiff's own affidavit and exhibits are aimed at demonstrating that allegedly wrongful conduct occurred against Plaintiff shortly after his assistance of co-workers in filing their own grievances. *See, e.g., doc. 53* at 5-7; 21-22. Even assuming such a conspiracy actually existed, its retaliatory nature would not create a right of recovery under § 1985(3). *Rogler*, 610 F. Supp. 2d at 105. Defendants are thus entitled to summary judgment on this claim.

## XI.   42 U.S.C. § 1986 CLAIM FOR FAILURE TO PREVENT CONSPIRACY (COUNT XII)

42 U.S.C. § 1986 creates a cause of action against any individual who: (1) has knowledge of a conspiracy to commit the wrongs described in 42 U.S.C. § 1985 and (2) neglects or refuses to prevent or aid in the prevention of such conspiracy to the extent that they are capable. Plaintiff alleges that Defendants Barbara Auten, Human Resources Director for the NMPDD, and Bennett Baur, Chief Public Defender of the NMPDD, had knowledge of a conspiracy by Defendants Cockman and Taylor to illegally discharge Plaintiff and failed to prevent it. *See Doc. 3-1, Ex. A* at 27-28.

Section 1986 does not create an independent scope of conduct for conspiracy, but rather exists "only to further and bolster the protections" provided by § 1985. *See Robeson v. Fanelli*, 94 F. Supp. 62, 68 (S.D.N.Y. 1950). As such, "[a] prerequisite for a claim under section 1986 is the existence of a conspiracy actionable under section 1985." *Lowden v. William M. Mercer, Inc.*, 903 F. Supp. 212, 218 (D. Mass. 1995). As explained in the previous section, Plaintiff has failed to provide facts demonstrating a conspiracy by

Defendants Cockman and Taylor which would be actionable under § 1985.

Accordingly, there was no § 1985 conspiracy to prevent, and Defendants are entitled to

summary judgment on this claim.

## XII.   42 U.S.C. § 1983 CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (COUNT XIII)

Plaintiff bases his thirteenth cause of action on false and malicious statements

allegedly made by Defendants Cockman and Taylor at a local tavern.  Plaintiff claims

that these statements were intended to cause extreme emotional distress and chill

Plaintiff's protected speech, in violation of 42 U.S.C. § 1983.  *Doc. 3-1*, Ex. A at 28.

However, intentional infliction of emotional distress is a tort claim which is not derived

from any federal law.  *See, e.g., Gioia v. Pinkerton's Inc.*, 194 F. Supp. 2d 1207, 1222

(D.N.M. 2002) (analyzing a claim for intentional infliction of emotional distress under

state law).  Defendants are correct in concluding that it is not justiciable as a § 1983

claim, as liability under § 1983 cannot be based on a violation of state law alone.

*Dunegan v. City of Council Grove, Kansas Water Dep't*, 77 F. Supp. 2d 1192, 1207 (D. Kan.

1999); *Jones v. City & County of Denver*, 854 F.2d 1206, 1209 (10th Cir. 1988).  Plaintiff has

therefore failed to establish a *prima facie* § 1983 claim for intentional infliction of

emotional distress based on the allegations of his complaint and supporting exhibits.

Defendants also address the merits of this argument as if it were a correctly-pled

state law tort claim, presumably under the assumption that Plaintiff is entitled to a

liberal construction of pleadings generally afforded to *pro se* litigants.  He is not.  Under

44

normal circumstances, a "pro se document is to be liberally construed," and "can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). However, the basis for extending this leniency is that "courts generally assume that a pro se litigant has neither substantial legal training nor the assistance of an attorney." *Wesley v. Don Stein Buick, Inc.*, 987 F. Supp. 884, 885 (D. Kan. 1997). Under such circumstances, "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings *drafted by lawyers*." *Estelle* 429 U.S. at 106 (emphasis added) (internal quotation marks omitted).

Here, however, it is undisputed that Plaintiff is a licensed attorney experienced in litigation. *See doc. 3-1*, Ex. A at 36 (Plaintiff signing his complaint as "Thomas R. May (New Mexico #141623) Attorney at Law"); *doc. 53* at 5 (affidavit describing Plaintiff as law school graduate, former Judicial Attorney for the Ohio Court of Appeals, and current solo practitioner). As such, he is not entitled to the leniency normally used for *pro se* pleadings. *See Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001) (*"While we are generally obliged to construe pro se pleadings liberally, we decline to do so here because [Plaintiff] is a licensed attorney."*). Thus, the Court will not second-guess the strategic decisions Plaintiff made in deciding what claims to pursue on his own behalf nor will it absolve him of the responsibility to accurately state the legal basis of those

claims.  Defendants are entitled to summary judgment on this claim as a matter of law.

## XIII.  CLAIM FOR PROMISSORY ESTOPPEL (COUNT XVI)

In this claim, Plaintiff argues that Defendants breached principles of promissory

estoppel in terminating his employment.  *See doc. 3-1*, Ex. A at 31-32.  Plaintiff

specifically claims that Defendant Taylor "made a promise" to continue Plaintiff's

employment "as long as Plaintiff continued to manage the substantial and excessive

workload assigned to Plaintiff."  *Id.* at 31.  Plaintiff asserts that he relied on this promise

in choosing to accept and manage a "disproportionate workload" and that such reliance

was reasonable because he "believed the promise to be true . . . ."  *Id.* at 32.  The remedy

he seeks is "enforcement of [Taylor's] promise."  *Id.*

While New Mexico state law bars suit against public entities on the basis of

contract claims, it is unclear whether such immunity would extend to an equitable claim

based on promissory estoppel.  *See, e.g.,* N.M. Stat. Ann. § 37-1-23 (1978)

("Governmental entities are granted immunity from actions based on contract, except

actions based on a valid written contract.").  While expressing skepticism at this

possibility, the New Mexico Court of Appeals has nonetheless left open the question of

whether a promissory estoppel claim would circumvent government immunity relating

to contracts.  *See Campos de Suenos, Ltd. v. Cty. of Bernalillo*, 28 P.3d 1104, 1113 (N.M. Ct.

App. 2001).  Regardless, we need not resolve the scope of state immunity, since

Plaintiff's claim is clearly deficient on the merits.

46

The New Mexico Supreme Court has articulated that the following elements are necessary to prevail on a claim for promissory estoppel:

> (1) An actual promise must have been made which in fact induced the promisee's action or forbearance; (2) *The promisee's reliance on the promise must have been reasonable*; (3) The promisee's action or forbearance must have amounted to a substantial change in position; (4) The promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice.

*Strata Prod. Co. v. Mercury Expl. Co.*, 916 P.2d 822, 828 (N.M. 1996) (emphasis added). Here, the parties disagree on whether or not any such promise was made. However, even assuming *arguendo* that a promise of guaranteed continuing employment was made, such a promise could not have been reasonably relied on by Plaintiff. In interpreting the reasonableness requirement, New Mexico courts have held that persons are charged with notice that public officers are limited in their authority to bind government entities. *Campos de Suenos*, 28 P.3d at 1113. Thus, a public official's promise which exceeds his authority may not be relied upon to form the basis of a promissory estoppel claim.

As noted in Section V (A), state law provides that, "Probationers and employees in emergency or temporary status may be suspended, demoted, or dismissed effective immediately with written notice and without right of appeal to the board." N.M. Admin. Code 1.7.11 (11/14/02); *Cockrell*, 983 P.2d at 428 ("Probationary employees have no expectancy of continued employment and may be terminated without cause and

without procedural protections such as notice and a hearing.").  Further, New Mexico law also explicitly provides that all public employees are subject to a probationer status for a one-year term in which they may be discharged or demoted without a hearing. N.M. Stat. Ann. §§ 10-9-13(E); N.M. Admin. Code 10.12.2.8 (A) (7/1/2015) (stating that "[a] probationary period of one year is required of all employees unless otherwise provided for by these rules.").  Thus, Plaintiff could not have reasonably believed that his supervisor had the authority to transform his status from probationary to permanent in contravention of statutory and regulatory mandates, regardless of what representations may have been made to him.  Accordingly, summary judgment in favor of the Defendants is proper.

## XIV.   42 U.S.C. § 1983 CLAIM FOR NEGLIGENCE IN HIRING, RETENTION, TRAINING, AND SUPERVISION (COUNT XVII)

The final claim at issue on Defendant's summary judgment motion is Plaintiff's allegation that Defendants Auten and Baur failed to exercise reasonable diligence in hiring and retaining Defendants Taylor and Cockman due to their lack of competency and fitness as supervisors.[5]  *Doc. 3-1*, Ex. A at 32-33.  Plaintiff further asserts that Auten and Baur were responsible for providing training, supervision, policies, and customs for the prevention of gender and racial discrimination and that they negligently failed to

---

[5] In their motion for summary judgment, Defendants contend that Plaintiff's statements in this count regarding Defendants Cockman and Taylor constitute false and defamatory misrepresentations to the court in violation of Rule 11 of the Federal Rules of Civil Procedure and request that the Court issue sanctions. *Doc.* 52 at 16-17. However, the Court declines to address this argument, as Defendants failed to comply with the requirement that a motion for sanctions under Rule 11 must be made separately from any other motion. *See* Fed. R. Civ. P. 11(c)(2).

detect and correct instances of discrimination.  *Id.* at 34.  As an initial matter, the Court notes that Plaintiff has failed to provide sufficient evidence of any underlying discriminatory conduct that resulted from a failure to supervise or train employees. However, even assuming that Plaintiff could establish wrongdoing on the part of Defendants Cockman and Taylor, this claim against Defendants Auten and Baur would fail.

Plaintiff's assertions regarding negligent hiring and retention cannot form the basis of a § 1983 suit because they constitute a common law tort claim evaluated exclusively under state law.  *See E.E.O.C. v. MTS Corp.*, 937 F. Supp. 1503, 1515 (D.N.M. 1996).  However, a failure to supervise or prevent the constitutional violations perpetrated by employees is justiciable under § 1983.  Establishing liability normally "requires that the state employee's discriminatory conduct be representative of an official policy or custom of the institution or are taken by an official with final policymaking authority."  *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124 (10th Cir. 2008) (internal citations omitted).  Where the discriminatory conduct is not representative of an official policy or perpetrated by an official with final authority, a plaintiff may alternatively demonstrate a custom of failure to receive, investigate, or act on complaints of constitutional violations.  *Id.* at 1125.  Under this theory, "a plaintiff must prove (1) a continuing, widespread, and persistent pattern of misconduct by the state; (2) deliberate indifference to or tacit authorization of the

conduct by policy-making officials after notice of the conduct; and (3) a resulting injury to the plaintiff."  *Id.*

As noted above, it is clear that discrimination on the basis of race and gender is not representative of the official policy of NMPDD.  On the contrary, the NMPDD policy on employment and hiring codified by the New Mexico Administrative Code states that employment decisions are to be made "without regard to race, color, religion, national origin, ancestry, sex, sexual orientation, age, or mental or physical disability . . . ."  N.M. Admin. Code 10.12.5.9 (B).  Affidavits from Defendants Taylor and Cockman confirmed their understanding of the NMPDD's policy of nondiscrimination.  *See doc. 52-2*, Ex. C at 2; Ex. D at 2.

It is equally evident that any alleged discrimination was not perpetrated by an official with final policymaking authority.  Indeed, the only named Defendant whom Plaintiff states holds such authority over NMPDD employment practices is Baur, due to his position as Acting Chief Public Defender.  *See doc. 3-1, Ex. A* at 34.  However, according to Plaintiff's complaint, all of the alleged discriminatory conduct was supposedly perpetrated by Taylor and Cockman, while Baur merely failed to prevent or correct it.  *Id.* at 33 ("COCKMAN and TAYLOR's acts were the proximate and legal cause of Plaintiff's injuries . . .").  Thus, the Court proceeds to determine whether a custom of failure to prevent constitutional violations existed.

The first element is subject to disagreement by the parties.  Plaintiff asserts that

the NMPDD has widespread and persistent misconduct with regard to race and gender

discrimination.  *See doc. 3-1*, Ex. A at 7-8.  He claims specifically that "numerous"

support staff members, whose names Plaintiff provides in the complaint, had resigned

or been terminated within a short period due to being "women of color" and for having

complained of unfair treatment.  *Id*.  Defendants deny these claims and state that they

were each unaware of any misconduct.  *See doc. 52-2*, Ex. C at 2, Ex. D at 2-3, Ex. E. at 1-

2.

However, this dispute is not material, as Plaintiff has not satisfied the second

element.  A showing of discriminatory custom requires evidence of "deliberate

indifference to or tacit authorization" of the conduct by policy-making officials.  *Rost ex*

*rel. K.C.*, 511 F.3d at 1125.  Allegations of mere negligence are not sufficient, as

supervisory liability requires some level of actual knowledge and acquiescence.  *See*

*Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997); *Langley v. Adams Cty., Colo.*, 987

F.2d 1473, 1481 (10th Cir. 1993).  Here, Plaintiff's allegations are all premised on a theory

of negligence.  He stated specifically in his complaint that "the injuries sustained by

Plaintiff were caused by reason of the carelessness and negligence" of Auten and Baur.

*Doc. 3-1*, Ex. A at 34.  Further, Plaintiff provides no evidence that Auten or Baur had any

notice or actual knowledge of any alleged wrongdoing, merely asserting instead that

they reasonably should have known or could have ascertained through reasonable

diligence that Cockman and Taylor's competency and lack of training would create a substantial risk of discrimination.  *Id.* at 33-34.  These assertions, even if true, are probative only under a negligence standard and do not provide any evidence of deliberate indifference or tacit authorization.  Defendants are thus entitled to summary judgment as to this claim.

## XV.   CLAIMS AGAINST THE NMPDD AND ITS EMPLOYEES IN THEIR OFFICIAL CAPACITY

In addition to the assertions against the named individuals above, virtually all claims mentioned have also been levied against the New Mexico Public Defender Department itself, either explicitly or through suit against individuals in their official capacity. *See doc. 3-1* at 1-2; *Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985) (federal suits against state officials in their official capacity are considered suits against the state). In response, Defendants have raised the defense of immunity stemming from the Eleventh Amendment of the United States Constitution on behalf of the NMPDD itself and all official-capacity suits against its officials.  *See doc. 9* at 7-8; *doc. 52* at 4.

"[T]he Eleventh Amendment is a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state."  *Peterson v. Martinez,* 707 F.3d 1197, 1205 (10th Cir. 2013) (internal quotation marks omitted).  Thus, under normal circumstances, this immunity would preclude suit against the NMPDD as an arm of the state, as well as against its employees in their official capacity. *See Duke v. Grady Mun. Sch.*, 127 F.3d 972, 974 (10th Cir. 1997); *Graham,* 473 U.S. at 165-66.  However, the

Supreme Court has made clear that, when a state entity invokes federal jurisdiction by exercising its right to remove a dispute to federal court, it waives the right to invoke the Eleventh Amendment protections of sovereign immunity. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 618-620 (2002). Accordingly, Defendants may not rely on Eleventh Amendment immunity to bar claims against the NMPDD or its officials. Nonetheless summary judgment on all claims discussed above is also appropriate as to these parties.

With regard to Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 (Counts IV, VI, IX, XIII and XVII), the NMPDD and its employees named in their official capacity are not subject to suit. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. In interpreting this provision, the Supreme Court has held the text revealed it was intended to exclude states from the category of "[e]very person." *Hafer v. Melo*, 502 U.S. 21, 26 (1991). The Court further explained that "[a]lthough 'state officials literally are persons,' an official-capacity suit against a state officer 'is not a suit against the official but rather is a suit against the official's office. As such it is no different from a suit against the State itself.'" *Id.* (quoting *Will*, 491 U.S. at 71). Thus,

the Court concluded that "neither a State nor its officials acting in their official

capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71.

Similarly, Plaintiffs claims against the NMPDD and its employees acting in their

official capacity brought pursuant to 42 U.S.C. § 1985-86 (Counts XI and XII) are

precluded as a matter of law.  A § 1985(3) claim may not be brought against a

government entity or public employees in their official capacity because representatives

of a government are presumed to represent the entity itself.  *See Roybal v. City of*

*Albuquerque*, 653 F. Supp. 102, 107 (D.N.M. 1986) (citing *Kentucky v. Graham,* 473 U.S.

159, 165-66 (1985)).  As a public entity is not capable of conspiring with itself on any

matter, the required elements of a § 1985(3) claim cannot be satisfied.  *Id.* (citing *Weaver,*

605 F. Supp. at 214–15). This failure as to an essential element would also foreclose

liability of a government entity under § 1986. *See Lowden*, 903 F. Supp. at 218 ("[a]

prerequisite for a claim under section 1986 is the existence of a conspiracy actionable

under section 1985").

Plaintiff's sole remaining federal claim (Count VIII), brought pursuant to 42

U.S.C. § 1981, has already been disposed of by this Court on its merits. *See supra*, Section

VII.  Given that Plaintiff has not presented a *prima facie* case of racial discrimination

with regard to any individually named defendant, the failure to prove an official policy

of discrimination entitles the NMPDD to summary judgment as to this claim. *See*

*Tomsic*, 85 F.3d at 1477; N.M. Admin. Code 10.12.5.9 (B).

54

With regard to Plaintiff's state law claims subject to the New Mexico Tort Claims Act (Counts II, III, X, and XVI),[6] the NMPDD and its employees are immune from liability under state-law immunity. The Tenth Circuit has clarified the holding in *Lapides* to mean that, while removal to federal court by a state entity waives the right to Eleventh Amendment immunity from suit, the state retains all immunities from liability which could have been asserted in state court. *See Trant*, 754 F.3d at 1172-74. As discussed above, New Mexico's Tort Claims Act grants immunity to both government entities and public employees while acting within the scope of duty. *See* N.M. Stat. Ann. § 41-4-4A (1978). As such, Plaintiff's state-law claims based on breach of contract[7], defamation in an employee evaluation, and conspiracy are barred against the NMPDD and its agents. *See* N.M. Stat. Ann. § 37-1-23; N.M. Stat. Ann. § 31-15 (1978); N.M. Admin. Code 1.7.9 *Seeds*, 113 P.3d at 859.

Accordingly, as with each individually named Defendant, there exists no genuine issue of material fact which would preclude a grant of summary judgment as to the NMPDD and its employees in their official capacity.

---

[6] Though Count I is also premised upon state law, the New Mexico Supreme Court has clarified that claims brought under the state's Human Rights Act are not subject to immunity under the Tort Claims act. *Luboyeski v. Hill*, 872 P.2d 353, 356-58 (N.M. 1994). Nonetheless the Court explained above that summary judgment was warranted on the merits. *See supra,* Section III.

[7] With regard to Count XVI, the Court explained that, while the state law provided immunity from contract claims, a New Mexico Court of Appeal had left open the question of whether such immunity applied to claims for promissory estoppel. *See Campos de Suenos*, 28 P.3d at 1113. Nonetheless the Court explained above that summary judgment was warranted on the merits. *See supra*, Section XIII.

**XVI.    CONCLUSION**

For the forgoing reasons, the Court GRANTS Defendants' Motions for Summary

Judgment (*docs. 52, 69*) as to Counts I, II, III, IV, VI, VIII, IX, X, XI, XII, XIII, XVI & XVII.

Plaintiff's claims are DISMISSED WITH PREJUDICE.[8]

**IT IS SO ORDERED.**

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**

---

[8] As all Plaintiff's claims have been dismissed, the Court also DENIES as moot his motions in limine (*docs. 70, 71, 72, 73, 74, 75, 76*).